UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-cv-22212-DPG

RUN-TIGER LLC, d/b/a RUN-CHICKEN,

    Plaintiff,

v.

THE INDIVIDUALS, CORPORATIONS, LIMITED
LIABILITY COMPANIES, PARTNERSHIPS, AND
UNINCORPORATED ASSOCIATIONS IDENTIFIED
ON SCHEDULE A TO THE COMPLAINT,

    Defendants.
_____/

**PLAINTIFF'S MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT
AGAINST DEFENDANTS AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

Pursuant to Federal Rule of Civil Procedure 55(b), Plaintiff, Run-Tiger LLC, d/b/a Run-Chicken ("Run-Chicken" or "Plaintiff"), by and through its undersigned counsel, hereby moves this Honorable Court for an entry of final default judgment against Defendants, the Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations identified on the Schedule "A" hereto (collectively "Defaulting Defendants"). Plaintiff does not intend to pursue its case further against those Defendants that it has requested be voluntarily dismissed or the Court has granted an extension of time to respond to the Amended Complaint ("Excluded Defendants"). The remaining Defendants have failed to plead or otherwise properly defend this action within the allotted time in violation of Federal Rule of Civil Procedure 12(a)(1)(A). Accordingly, Plaintiff submits the following Memorandum of Law in support of its

Motion for Entry of Final Default Judgment under Fed. R. Civ. P. 55 against the Defaulting Defendants, being all of the Defendants in this case except for the Excluded Defendants[1].

## I. INTRODUCTION

Plaintiff filed its Amended Complaint against Defendants for copyright infringement on July 26, 2024 (Dkt. 6). Defaulting Defendants are in default, and the prerequisites for a default judgment have been met. Plaintiff therefore seeks default judgment finding Defaulting Defendants liable on all counts of its Amended Complaint. As part of the judgment, Plaintiff requests entry of a permanent injunction and an award of statutory damages for Defaulting Defendants' willful infringement pursuant to 17 U.S.C. § 504. Plaintiff also requests the Court order the listings and associated images infringing of Plaintiff's copyrights, currently being used by Defaulting Defendants, be permanently removed to ensure the associated e-commerce marketplace stores may no longer be used as a means for selling products infringing on Plaintiff's copyrights and intellectual property rights.

## II. STATEMENT OF FACTS

### A. Plaintiff's Rights

Plaintiff is the owner of the federally registered copyrighted works identified in paragraph 5 and Exhibit 1 of Jure Markic's Declaration in Support of Plaintiff's *Ex Parte* Motion for Temporary Restraining Order, A Temporary Injunction, A Temporary Transfer of the Defendant Internet Stores, A Temporary Asset Restraint, and Expedited Discovery ("Markic Decl.") (Dkt. 9) (the "Run-Chicken Copyrighted Works"). (*See also* U.S. Copyright Registrations for the Run-

---

[1] Plaintiff is not moving for default against previously dismissed defendants Feida-store (DOE 4), Guanyanyi (DOE 7), Luoqiuhong store (DOE 11) or 九江常泽商贸有限公司 (DOE 17). Plaintiff is also not moving for default against defendants GIFANK (DOE 6), smatfarm (DOE 14), and ZX-JIELI (DOE 16).

Chicken Copyrighted Works attached as Exhibit 1 to the Amended Complaint (Dkt. 6)). The Run-Chicken Copyrighted Works are used in connection with the design, marketing, and distribution of genuine high-quality Run-Chicken branded goods. (Markic Decl. ¶ 7.) The Run-Chicken Copyrighted Works are symbols of Plaintiff's quality, reputation, and goodwill and have never been abandoned. (*Id.* ¶¶ 10-14.) Moreover, Plaintiff has expended substantial time, money, and other resources developing, advertising, and otherwise promoting its Run-Chicken Copyrighted Works. (*Id.* ¶ 14.)

Furthermore, Plaintiff has extensively used, advertised, and promoted the Run-Chicken Copyrighted Works in the United States, and has carefully monitored and policed the use of the Run-Chicken Copyrighted Works. (*Id.* ¶¶ 12-16.) As a result of Plaintiff's efforts, the Run-Chicken Copyrighted Works are widely recognized and exclusively associated by consumers, the public, and the trade as being sourced from Run-Chicken. (*Id.*)

### B. Defendants' Infringing Acts

As alleged by Plaintiff, admitted by default, and established by the evidence submitted with Plaintiff's *Ex Parte* Motion for Temporary Restraining Order, A Temporary Injunction, A Temporary Transfer of the Defendant Internet Stores, A Temporary Asset Restraint, and Expedited Discovery ("Application for Entry of Temporary Restraining Order"), Defaulting Defendants operate and control e-commerce stores via third-party marketplace websites under their seller identification names and/or commercial Internet websites operating under their domain names as identified on Schedule "A" hereto (the "Seller IDs"). As such, Defaulting Defendants are the active, conscious, and dominant forces behind the promotion, advertisement, distribution, offering for sale, and sale of goods infringing the Run-Chicken Copyrighted Works (the "Infringing Products"). (*See* Am. Compl. ¶¶ 34-47; Markic Decl. ¶¶ 15-17; *see also* relevant web page captures

from Defendants' Internet based e-commerce stores and commercial websites operating under the Seller IDs displaying the Run-Chicken branded items offered for sale ("Defendants' Seller IDs") attached as Exhibit 1 to the Declaration of Nicole Fundora in Support of Plaintiff's Motion for Entry of Default Judgment ("Fundora Decl.").

Further, as admitted by Defaulting Defendants through default, and at all times relevant, Defaulting Defendants have had full knowledge of Plaintiff's ownership of the Run-Chicken Copyrighted Works, including its exclusive right to use and license such intellectual property and the goodwill associated therewith. (Am. Compl. ¶¶ 36, 52.) Defaulting Defendants do not have, nor have they ever had, the right or authority to use the Run-Chicken Copyrighted Works for any purpose. (*See* Markic Decl. ¶ 17.) However, despite their known lack of authority to do so, Defaulting Defendants have engaged in the activity of promoting, and otherwise advertising, selling, offering for sale, and distributing their Infringing Products via the Seller IDs. (*See* Am. Compl. ¶¶ 37-42, 52-57; *see also* Markic Decl. ¶¶ 16-19.)

Plaintiff's evidence demonstrates Defaulting Defendants are engaged in the fraudulent promotion, advertisement, distribution, offering for sale, and sale of goods infringing the Run-Chicken Copyrighted Works. Plaintiff investigated the promotion and sale of Infringing Products by Defendants through the Seller IDs. (Markic Decl. ¶¶ 16-17.) Plaintiff's investigation accessed Defaulting Defendants' Internet based e-commerce stores operating under each of the Seller IDs, and placed orders for the purchase of various products infringing the Run-Chicken Copyrighted Works at issue in this action from each Defaulting Defendant, and requested each product to be shipped to an address in this District. (*Id.* ¶ 16-18.) At the conclusion of the process, the detailed web page captures and images of the Infringing Products wherein orders were initiated via Defendants' Seller IDs, were sent to Plaintiff's representative for review. (*Id.*)

Plaintiff's representative reviewed and inspected the Infringing Products ordered from each of the Seller IDs and by reviewing the e-commerce stores and websites operating under each of the Seller IDs, or the detailed web page captures and images of the items infringing the Run-Chicken Copyrighted Works, determined the products were not genuine versions of Plaintiff's products. (*Id.* ¶ 16-17.)

### C. Procedural Background

On July 26, 2024, Plaintiff filed its Amended Complaint (Dkt. 6) against Defendants. On July 26, 2024, Plaintiff filed its *Ex Parte* Application for Entry of Temporary Restraining Order (Dkt. 9). On August 28, 2024, the Court issued an Order entering the Temporary Restraining Order (Dkt. 13), and converted the temporary restraining order into a preliminary injunction on September 24, 2024 (Dkt. 34). The temporary restraining order and preliminary injunction required, *inter alia*, any third party financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms who is providing services for any of the Defendants, including but not limited to, Amazon and their related companies and affiliates (collectively, the "Third Party Providers"), to identify and restrain all funds in Defendants' associated payment accounts, including all other financial accounts tied to, used by, or that transmit funds into, the respective Defendants' financial accounts, and divert those funds to a holding account for the trust of the Court. (*See* Fundora Decl. ¶ 2.) Subsequently, Plaintiff's counsel received notice from the applicable financial institutions that they complied with the requirements of the Court's Order. (*Id.*)

The Court's Order Granting Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order (Dkt. 13) also authorized Plaintiff to serve the Summons, Amended Complaint, and all subsequent filings in this matter upon foreign Defendants via e-mail and posting copies of

the same on Plaintiff's designated service notice website. Pursuant to the Court's Order, Plaintiff served foreign Defendants by e-mail, and via http://runtiger-cases.com/case-24-cv-22212.html (*See* Fundora Decl. ¶ 3.) The time allowed for Defaulting Defendants to respond to the Amended Complaint has expired. (*Id.* ¶ 4.) Defaulting Defendants have not been granted any extension of time to respond, nor have they served or filed an Answer or other response. (*Id.* ¶ 5.) To Plaintiff's knowledge, none of the Defaulting Defendants are infants or incompetent persons, and, upon information and belief, the Servicemembers Civil Relief Act does not apply. (*Id.* ¶ 6.) On October 7, 2024, Plaintiff filed its Request for Clerk's Entry of Default against Defaulting Defendants. (Dkt. 36.) On October 8, 2024, the Clerk entered default against each Defaulting Defendant for failure to appear, answer or otherwise plead to the Amended Complaint filed herein within the time required (Dkt. 37).

Plaintiff now moves the Court to grant Final Default Judgment against Defaulting Defendants.

### III.   ARGUMENT

#### A.   Default Judgment Should be Entered Against Defendants.

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338. Personal jurisdiction over Defaulting Defendants and venue in this district are proper under Florida Statute § 48.193(1)(a)(2), § 48.193(1)(a)(1), and 28 U.S.C. § 1391 as Defaulting Defendants direct business activities toward consumers throughout the United States, including within the State of Florida and this district and cause harm to Plaintiff's business within this jurisdiction through the Internet based e-commerce stores and websites operating under the Seller IDs. (*See* Am. Compl. ¶¶ 12-18.)

##### 1.   Default Judgment is Proper.

A court may order a default judgment pursuant to Fed. R. Civ. P. 55(b)(2) following the entry of default by the court clerk under Rule 55(a). *See* Fed. R. Civ. P. 55. Upon entry of default by the clerk, the well-pled factual allegations of a plaintiff's complaint, other than those related to damages, will be taken as true. *PetMed Express, Inc. v. Medpets.com*, 336 F.Supp.2d 1213, 1217 (S.D. Fla. 2004) (citing *Buchanan v. Bowman*, 820 F.2d 359 (11th Cir. 1987)). In this case, the Amended Complaint, pleadings, and declaration filed in support of Plaintiff's Motion for Entry of Final Default Judgment clearly demonstrate that default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure should be entered against Defaulting Defendants.

Where there are multiple defendants, "plaintiff must state in a motion for default judgment that there are no allegations of joint and several liability and set forth the basis why there is no possibility of inconsistent liability." *Adidas AG v. Adidasjeremycottitalia.eu*, No. 13-cv-62712, 2014 WL 1122017, at *2 (S.D. Fla. Aug. 14, 2014) (entering default judgment against all defendants even where plaintiff alleged joint and several liability, because all defendants defaulted).

Here, Plaintiff makes no allegations of joint and several liability against the Defaulting Defendants, who are the only Defendants remaining in this case. The Amended Complaint alleges, and the evidence establishes, that each Defaulting Defendant sold or offered to sell Infringing Products. As explained more fully below, Plaintiff seeks statutory damages against each Defaulting Defendant for each Defaulting Defendants' willful infringement. As a result, there is no risk of inconsistent liability.

### 2. Factual Allegations Establish Defendants' Liability.

Plaintiff has established liability for its copyright claim. "A claim for copyright infringement consists of only two elements: 1) a plaintiff must show that the plaintiff owns a valid

7

copyright; and 2) that the defendant has engaged in unauthorized copying." *Heralds of the Gospel Foundation, Inc. v. Varela*, No. 17-cv-22281, 2017 WL 3868421, at *3 (S.D. Fla. June 23, 2017) (citing *Roig v. Star Lofts on the Bay Condominium Ass'n, Inc.*, No. 11-cv-20421, 2011 WL 6178882, at *2 (S.D. Fla. Dec. 12, 2011)). "The copying must be so extensive that there is a substantial similarity between the defendant's work and the protectible elements of the plaintiff's work." *Id.* (citing *Latele Television, C.A. v. Telemundo Commc'ns Grp., LLC*, No. 12-cv-22539, 2015 WL 427817, at *5 (S.D. Fla. Feb. 2, 2015)). Here, Plaintiff owns several U.S. copyright registrations for photographs of its automatic chicken coop door. *See* Dkt. 1; *see also* Markic Decl. ¶ 5.

With respect to the second element for establishing copyright infringement, comparisons of Defaulting Defendants' Goods with Plaintiff's Copyrighted Works conclusively demonstrate Defaulting Defendants' blatant infringement of Plaintiff's exclusive copyrights. *Compare* Exhibit 1 to Amended Complaint with Exhibit 1 to the Fundora Decl. (Defaulting Defendants' Seller IDs). Specifically, the evidence submitted shows that Defaulting Defendants' ongoing unauthorized promotion and sale of goods bearing Plaintiff's Copyrighted Works through their e-commerce stores and websites using at least the Seller IDs, directly infringe Plaintiff's exclusive rights under the Copyright Act, specifically, Plaintiff's exclusive rights to reproduce, prepare derivatives, distribute, and/or display its Copyrighted Works. 17 U.S.C. §§ 106(1), (2), (3), and (5); *see also Tiffany (NJ), LLC v. Dongping*, No. 10-cv-61214, 2010 WL 4450451, at *5 (S.D. Fla. Oct. 29, 2010) (finding unopposed declarations supporting copyright ownership and "exact duplicates" of asserted designs were "sufficient to establish liability for copyright infringement").

Thus, the factual allegations in Plaintiff's Amended Complaint properly alleged the elements for the above claims. Moreover, the factual allegations in Plaintiff's Amended

8

Complaint, substantiated by the evidence submitted herewith, conclusively establish Defaulting Defendants' liability under each of the claims asserted in the Amended Complaint. Accordingly, Default Judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure should be entered against Defaulting Defendants.

      **B.    Plaintiff's Requested Relief Should be Granted.**

            **1.    Entry of a Permanent Injunction is Appropriate.**

Permanent injunctive relief is appropriate where a plaintiff demonstrates 1) it has suffered irreparable injury; 2) there is no adequate remedy at law; 3) the balance of hardship favors an equitable remedy; and 4) an issuance of an injunction is in the public's interest. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 392-93, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006). As demonstrated herein, and based upon the issuance of the temporary restraining order and preliminary injunction entered in this matter, Plaintiff has carried its burden on each of the four factors, warranting permanent injunctive relief, as Defaulting Defendants have unlawfully used Plaintiff's goodwill to make a profit. Accordingly, permanent injunctive relief is appropriate.

Defaulting Defendants' actions merit permanent injunctive relief, not only to protect Plaintiff's reputation, but also to protect consumers from being deceived as to the quality and source of products. The facts alleged in Plaintiff's Amended Complaint, substantiated by the evidence submitted, show Defaulting Defendants are continuously infringing and inducing others to infringe the Run-Chicken Copyrighted Works by using them to advertise, promote, and sell goods bearing marks which are identical or altered to be identical to the Run-Chicken Copyrighted Works. (*See* Am. Compl. ¶¶ 60-66.)

Plaintiff is suffering, and will continue to suffer, irreparable injury if Defaulting Defendants' infringing activities are not permanently enjoined. (Markic Decl. ¶¶ 29-34.)

"[S]ufficiently strong showing of likelihood of confusion . . . may by itself constitute a showing of a substantial threat of irreparable harm." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir.1998); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir.1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage LS & Co.'s business reputation and might decrease its legitimate sales."). In any event, Plaintiff's Amended Complaint alleges that Defaulting Defendants' unlawful actions have caused Plaintiff irreparable injury, and will continue to do so if Defaulting Defendants are not permanently enjoined. (Am. Compl. ¶ 72.) Defaulting Defendants have defaulted upon Plaintiff's factual allegations in that respect.

Additionally, Plaintiff has no adequate remedy at law so long as Defaulting Defendants continue to use Plaintiff's copyrights in connection with the operation of their Internet based e-commerce stores under the Seller IDs because Plaintiff will have no control over the quality of what appear to be its products in the marketplace. An award of money damages alone will not cure the injury to Plaintiff's reputation and goodwill which will result if Defaulting Defendants' infringing actions are allowed to continue. Moreover, it can hardly be said that Defaulting Defendants face hardship in refraining from their willful infringement of Plaintiff's copyrights, whereas Plaintiff faces hardship from loss of sales and its inability to control its reputation. In reality, Defaulting Defendants have no cognizable hardship as they will be prohibited from selling infringing products, an illegal act to begin with.

Finally, the public has an interest in the issuance of a permanent injunction against Defaulting Defendants in order to prevent consumers from being misled by Defaulting Defendants' products. *See Chanel, Inc. v. besumart.com*, 240 F. Supp. 3d 1283, 1291 (S.D. Fla. 2016) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting

consumers from such behavior." (alteration added) (citation omitted)); *BellSouth Adver. & and Publ'g. Corp. v. Real Color Pages, Inc.*, 792 F. Supp. 775, 785 (M.D. Fla. 1991) (holding "[i]n a trademark infringement or unfair competition case, a third party, the consuming public is present and its interests are paramount.") Ultimately, the permanent injunction will prevent consumer confusion and deception in the marketplace, and will protect Plaintiff's property interest in its copyrights.

Furthermore, as admitted by Defaulting Defendants through default, (i) the Seller IDs and associated payment accounts are essential components of Defaulting Defendants' online activities, and (ii) the Seller IDs themselves are one of the means by which Defaulting Defendants further their infringement scheme and cause harm to Plaintiff. (*See* Am. Compl. ¶ 40.) Therefore, in order to effectuate the injunction, all listings and associated images of goods displaying infringements of the Run-Chicken Copyrighted Works via the Seller IDs should be permanently removed by the applicable governing Internet marketplace platform operators and/or administrators. Without removing the listings and associated images of goods infringing on Plaintiff's copyrights, Defaulting Defendants will remain free to continue infringing Plaintiff's copyrights without impunity, will continue to benefit from the Internet traffic to those e-commerce stores and websites built through the unlawful use of the Run-Chicken Copyrighted Works, and will continue to defraud the public by their illegal activities. The Court's powers of equity can compel measures necessary to enforce an injunction against infringement. *See, e.g., Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for. . . the essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case."); *United States v. Bausch & Lomb Optical Co.*, 321 U.S.

707, 724 (1944) ("Equity has power to eradicate the evils of a condemned scheme by prohibition of the use of admittedly valid parts of an invalid whole.").

Defaulting Defendants have created an Internet-based infringement scheme and are profiting from the deliberate misappropriation of Plaintiff's rights. Unless the infringing listings and images of Plaintiff's copyrights are permanently removed, Defaulting Defendants will be free to continue to defraud the public with their illegal activities. Accordingly, the Court should eliminate the means by which Defaulting Defendants conduct their unlawful activities to further prevent the use of these instrumentalities of infringement.

### 2. Damages as to Count I for Copyright Infringement.

Plaintiff's Amended Complaint sets forth a cause of action for copyright infringement pursuant to the Copyright Laws of the United States, 17 U.S.C. § 101 *et seq.* In a case involving copyright infringement, the Copyright Act provides that a "copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages." *Arista Records, Inc. v. Beker Enters., Inc.,* 298 F. Supp. 2d 1310, 1312 (S.D. Fla. 2003). With respect to any one work, the Copyright Act permits a minimum award of $750 and a maximum award of $30,000. 17 U.S.C. § 504(c)(1). In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $200,000. 17 U.S.C. § 504(c)(2). Actual damages can be measured by lost revenue or sales, lost opportunities to license, or diminution in the value of the copyright. *Lorentz v. Sunshine Health Prods.*, No. 09-cv-61529-FM (S.D. Fla. Sep. 7, 2010).

However, obtaining disgorgement of an infringer's profits requires knowledge of the infringer's gross revenue. 17 U.S.C. § 504(b). Defaulting Defendants control the information

needed to accurately determine damages and where the lack of information regarding Defaulting Defendants' sales and profits makes statutory damages especially appropriate in default judgment cases like the instance case. In addition, an award of statutory damages is an appropriate remedy despite a Plaintiff's inability to prove actual damages. *See Volkswagen Group of Am., Inc. v. Varona*, 19-cv-24838-JG, 2021 WL 1997573 (S.D. Fla. May 18, 2021) (finding a statutory damages award particularly appropriate where Plaintiffs were unable to calculate actual damages); *Playboy Enter., Inc. v. Universal Tel-A-Talk, Inc.,* No. 96-cv-6961, 1998 WL 767440 (E.D. Pa. Nov. 3, 1998) (awarding statutory damages where plaintiff failed to prove actual damages or profits). Pursuant to 17 U.S.C. § 504(c), Plaintiff elects to recover an award of statutory damages as to Count I of the Amended Complaint.

Based on the above, Plaintiff respectfully requests the Court award statutory damages in the amount of $150,000.00 against each Defaulting Defendant for willful copyright infringement. Given the Court's clear discretion in determining the appropriate amount of the statutory damages award for copyright infringement, Plaintiff's request for an award of $150,000.00 per Defaulting Defendant is also supported by 17 U.S.C. § 504(c).

**IV.   CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests the Court enter final default judgment and a permanent injunction against Defaulting Defendants in the form of the proposed Final Default Judgment and Permanent Injunction filed herewith.

| | |
|---|---|
| Dated: October 17, 2024 | Respectfully submitted,<br><br>**BOIES SCHILLER FLEXNER LLP**<br><br>*/s/ Nicole Fundora*<br>Nicole Fundora (FL Bar No. 1010231)<br>100 SE 2nd Street<br>Suite 2800 |

>Miami, FL 33131
>Tel: (305) 539-8400
>nfundora@bsfllp.com
>
>***Attorney for Plaintiff RUN-TIGER, LLC,***
>***d/b/a RUN-CHICKEN***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of October, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that Boies Schiller Flexner LLP served the foregoing document to Defaulting Defendants via email to known email addresses and by posting the foregoing document on Plaintiff's Notice Website (http://runtiger-cases.com/case-24-cv-22212.html), consistent with this Court's order authorizing alternative service (Dkt. 14). The known emails for Defaulting Defendants are listed below.

>*/s/ Nicole Fundora*
>Nicole Fundora (FL Bar No. 1010231)

| Doe No. | Seller Name | Email address |
|---|---|---|
| 1.0 | Curiosity Tap | jamie_novak@icloud.com |
| 2.0 | Danbirdn | danniaochuhai@163.com |
| 3.0 | Divine Luxury Gifts | wowgiftstore.info@gmail.com |
| 5.0 | Fuzzy-Bird | fuzzybird@163.com |
| 8.0 | hao bao cheng | xmh800927@outlook.com |
| 9.0 | Htank | amazon1114am@163.com |
| 10.0 | KIDNEYTON | tilokietyupi36@gmail.com |
| 12.0 | MR QLI | 17321505291@163.com |
| 13.0 | OTYYWD | qwerty05140221@163.com |
| 15.0 | WenJiuKeJi | niudexin1@outlook.com |
| 18.0 | 鹏都 | 172715727@qq.com |